IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FLAMBEAU RIVER PAPERS, LLC,

                    OPINION AND ORDER

      Plaintiff,

                    15-cv-594-bbc

  v.

TURBINE GENERATOR
MAINTENANCE, INC.,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   In October 2014, plaintiff Flambeau River Papers, LLC, and defendant Turbine Generator Maintenance, Inc. entered into a contract for major repairs to a turbine generator at Flambeau's paper mill in Wisconsin. TGM did the work, but Flambeau found it substandard and refused to pay the full amount of the contract. This response led to a small cascade of judicial activity. TGM filed suit in a state court in Florida, relying on the forum selection clause in what it understood was the parties' agreement; a month later, Flambeau filed its own suit against TGM in state court in Wisconsin, denying that it had ever agreed to the forum selection clause. Flambeau then removed the Florida state court case to the United States District Court for the Middle District of Florida and asserted counterclaims against TGM, whereupon TGM removed Flambeau's Wisconsin state court case to this court. TGM now asks for a transfer of venue to the federal court in Florida or, in the alternative, for this court to stay the case pending resolution of the Florida case.

1

I conclude that the motion to transfer venue must be granted. Flambeau's main defense is that it manifested its intention not to accept any of the provisions of the service agreement, including the forum selection clause, when it omitted any reference to the service agreement at the time it submitted its purchase order to TGM. The argument it makes is implausible. Simply omitting a reference to the agreement would not have led TGM or any other reasonable party to understand that Flambeau was rejecting the service agreement. It is equally implausible that Flambeau would not have wanted to have the benefit of the service agreement governing the working terms and conditions for the project.

Flambeau makes an alternative argument, which is that its September 30, 2014 email to TGM was a counteroffer that made no reference to the service agreement; therefore, when the counteroffer was accepted by TGM, the effect was a new agreement that did not include the service agreement. A review of the email demonstrates the weakness of this argument as well. Accordingly, I will grant TGM's motion for a transfer of venue.

Solely for the purpose of deciding the motions to transfer venue or to stay, I find that the parties have fairly alleged the following facts.

## ALLEGATIONS OF FACT

Flambeau operates a paper mill in northwestern Wisconsin. TGM provides services related to the inspection, assessment and repair of turbines. Sometime before September 2014, Flambeau sought vendors who could inspect, assess and repair the turbine generator at its mill. TGM responded, visited the site, suggested solutions and proposed a price for the

2

work. Flambeau made counter suggestions. On September 18, 2014, Patrick McNaughton of TGM sent Mark Fischer of Flambeau a 53-page proposal and revised quote on Project No. WI18429. McNaughton wrote in the proposal letter that a

> services agreement has been included as a part of this proposal package and includes the terms and conditions required for TGM to perform work at your site. A signed purchase order, or letter of intent, from your company will be required prior to TGM's mobilization and performance of the work. The purchase order will need to reference this proposal number and the signed services agreement. Upon receipt of the signed purchase order, or letter of intent, a TGM Officer will sign the document and a copy will be returned to you for your records.

Dkt. #4-1 at 42-43. (All of the page citations to the parties' exhibits are to the court's electronic case filing page numbers.) In the same letter, McNaughton specified the product and work guarantee that TGM would provide with its services, under the heading, "Warranty Information." Id. at 11-12. The attached proposal package includes a Technical Narrative, Scope of Work, Division of Responsibilities, General Terms, a Time and Material Rate Sheet, a Service Agreement and the résumés of various TGM employees. Id. 14-67. (The parties use the term "service agreement" and "services agreement" interchangeably. I will stick with "service agreement."). The service agreement includes a provision titled "Dispute Resolution," id. at 42-43, under which any disputes are to be subject to binding arbitration to be held exclusively in Florida. In addition, each party agrees that it submits irrevocably to the exclusive jurisdiction of any court of the State of Florida or the United States District Court for the Southern District of Florida. (Neither party has explained why, in light of this provision, Flambeau moved the case to the *Middle* District of Florida.) Neither party ever signed the entire proposal package or the service agreement contained within it.

Moreover, these documents did not contain any signature lines.

On September 30, 2014, a Flambeau employee, Dave Wagner, wrote to tell McNaughton that Flambeau would accept TGM's proposal if TGM could clarify seven different issues, including questions about the warranty. Dkt. #16-2, at 2-3. Apparently, Wagner was satisfied with the clarification because Flambeau sent TGM a signed purchase order on October 3, 2014 that referred to proposal "No. W18429 R2, dated 9/18/14." Dkt. #14-3. The purchase order made no reference to a signed service agreement but TGM did not object to the omission, then or afterwards. At no time during the negotiations or when it sent the purchase order, did Flambeau express any objection to the service agreement or to any terms within that agreement.

At some point, Flambeau found fault with TGM's performance and refused to pay the full amount TGM had billed. TGM then began suit against Flambeau in a state court in Florida.

OPINION

In their briefs, Flambeau cites Wisconsin cases in support of its argument, whereas TGM cites Florida cases. Neither party has argued that the court should rely on the law of one state as opposed to the law of another so I will assume that Wisconsin's law applies.

Flambeau contends that because TGM provided Flambeau a particular method by which Flambeau could accept the service agreement if it chose to (by returning a signed purchase order to TGM that referred both to the proposal number and to the "signed service

agreement") and because Flambeau sent TGM a signed purchase order, referring to the proposal but making no reference to a signed service agreement, Flambeau never agreed to be bound by anything in the service agreement. Alternatively, Flambeau argues that when its employee, Dave Wagner, sent the "Acceptance Proposal" to McNaughton on September 30, 2014, Flambeau was presenting TGM a counteroffer, which TGM accepted and which did not contain the service agreement.

It is difficult to take Flambeau's arguments seriously. They rest on the unlikely premise that Flambeau recognized the problem of the forum selection clause in the service agreement at the time of contracting and chose to deal with it by simply omitting any reference to the service agreement in the purchase order it sent to TGM. A "failure to refer" to a signed service agreement is a slender reed on which to rely sometime in the future after disputes arise. If Flambeau had really objected to the forum selection clause at the time it accepted TGM's offer, why would it have agreed to the offer without raising its objection, along with the seven other matters on which it sought clarification? Why run the risk that the clause would be held binding at a later time when Flambeau had no more bargaining power?

Flambeau relies on American National Property & Casualty Co. v. Nersesian, 2004 WI App 215, 277 Wis. 2d 430, 689 N.W.2d 922, for the proposition that an authorized offer remains an unaccepted offer "until accepted in the mode and manner expressly provided by the terms of the offer," but the case is not helpful. In Nersesian, the issue was whether injured parties had agreed to settle a claim for injuries arising out of an automobile

accident. Although their counsel had told the insurance company that his client agreed to a settlement, the court held that no contract of settlement existed until the offeree had accepted the offer exactly as the offer had specified, that is, by negotiating the checks and returning signed releases. Until those things had been done, the insurer could not be certain whether the Nersesians had accepted or rejected the terms of the contract. In other words, negotiating the checks and signing and returning the releases were the essential elements of acceptance.

Flambeau tries to characterize its failure to refer to the service agreement as a material variation or essential element, but its effort is unconvincing. Flambeau merely failed to "reference" a service agreement that one or the other party was to have signed. Once TGM received Flambeau's purchase order, it started work on the project, with no objection from Flambeau. TGM's McNaughton never specified that Flambeau was required to sign the service agreement, only that Flambeau was to "reference this proposal number and the signed services agreement," and he never said which party was supposed to do the signing of the service agreement.

Alternatively, Flambeau argues that its submission to TGM of a signed purchase order with no signed services agreement and no reference to one amounted to a counteroffer. In support, it cites S.T. Edwards & Co. v. Shawano Milk Products Co., 211 Wis. 378, 247 N.W. 465, 467 (1933) ("An attempted acceptance of an offer, if coupled with any condition that varies or adds to the offer is not an acceptance, but a counter proposition or counter offer."). This argument suffers from the same failing as the previous one: the omission of

a "reference" to a signed service agreement is not a condition that varies or adds to the offer.

Flambeau's final argument is that Wagner's September 30 email, "Acceptance Proposal" to TGM's employee, McNaughton, was a counteroffer to TGM, which TGM accepted, and because the counteroffer said nothing about a service agreement, Flambeau is not bound by the forum selection clause contained in the service agreement. If this argument is adopted, Flambeau does not have the benefit of the warranties contained in the service agreement, but it claims it does not need them, in light of the warranties contained in McNaughton's September 18, 2014 letter. Plt.'s Br., dkt. #17-1, at 9. This is an odd argument for it to make, when it is contending that it rejected TGM's September 18 offer in favor of the September 30 "counteroffer." This argument is no more persuasive than Flambeau's first two. Rejection of an original offer generally precedes a counteroffer. In this instance, Flambeau did not convey rejection of the original offer; its representative, Wagner, asked only for "clarification of the following issues." Dkt. #16, exh. #2, at 2. And if Flambeau's request for clarification were a rejection of the initial offer, how could Flambeau rely on anything in the initial offer, whether it be the terms of the service or the letter from McNaughton?

I conclude that the parties agreed to the service agreement and the forum selection clause contained in that agreement and that Flambeau is bound by the clause. Under Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas, 134 S. Ct. 568, 581 (2013), a motion for a change of venue by a party seeking to enforce a forum selection clause must be granted in the absence of extraordinary

7

circumstances that clearly disfavor a transfer and that are unrelated to the convenience of the parties. Flambeau has not identified any extraordinary circumstances, so TGM's motion to transfer will be granted.

ORDER

IT IS ORDERED that the motion to transfer filed by defendant Turbine Generator Maintenance, Inc., dkt. #3, is GRANTED. Defendant's alternative motion for a stay pending resolution of the case pending in the United States District Court for the Middle District of Florida, as well as its motion to dismiss the complaint or for a more definite statement, dkt. #7, are DENIED as unnecessary. The case is transferred to the United States District Court for the Middle District of Florida. The clerk of court is directed to transmit the file to that court.

Entered this 14th day of December, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge